Good morning. My name is Vicki Buchanan. I'm here on behalf of Alvin Mack. Mr. Mack is serving a life sentence for failing to renew his application of his sex offender registration on his 51st birthday. Under the, under AEDPA, the courts below failed to apply clearly established federal law, constitutional law of the case Solem v. Helm. And that case requires that there not be, that sentencing be proportional to comply with the Eighth Amendment. In order to do that, you have to weigh the gravity of the offense that was committed versus the punishment that was incurred. The gravity of this case was a regulatory failure to register on an annual basis, and the gravity is life in prison. In addition, the courts are required to look at the disparity within the district of other crimes and other, other acts. And in this particular case, in California, murder, mayhem, robbery, assault, all kinds of crimes are punished for by far less than life imprisonment. Finally, as between California and other jurisdictions for the same, same type of act, they have to be, there has to be some relationship. In almost all other jurisdictions, it's a fine or a small jail sentence. California is by far the longest. Texas may be close. So under the, under the Solem test, if the courts below had applied it, it would be clearly, this would be a violation of clearly established federal law and a violation of the Eighth Amendment. Since we did the briefing, I filed a 28-J letter, which includes the case of Gonzales v. Duncan. And that's a recent case out of this circuit under identical facts in which the courts I mean, in Gonzales, the guy was at the same address, wasn't he, all along? He was at, yes, he was at the same address. And your guy had a different address. Well, I, we don't know if he had an address at all from the time he left the sober living unit until he was at his wife's address. However. Well, I mean, your guy had, had registered one address, but he was living at a different address. Well, the jury found that he was not living there, that he, that that was not his. No, they didn't find that. Well, they found that he was not convicted. They found him guilty. They did not convict him. They didn't, there wasn't a special verdict, was there, with findings? There were no special, there was not a special verdict, but the jury, it's clear from the record that the jury rejected the failure to register based on residence. And it's, they're saying. It was the annual registration, most likely. I don't think, I mean, it's, one can infer from the jury question that, that that's what they convicted him of at the end of her failure to register on the, on his birthday. During the argument over whether or not to strike the strike, counsel for Mr. Mack argued, you know, stated that, that it was a violation of the annual registration as opposed to. That, that's true. I mean, let's assume that's true. The fact of the matter is, in terms of the judges trying to decide the punishment, the, he did have a different address. I don't know that he, that he had a different registered address. Yes. I don't know how he would have registered when he was homeless, because from the record. But the statute say you register in the city if you're homeless. I don't, I guess you just say Los Angeles. Right. Yeah, something like that. The point is, in this particular case, as a matter of fact, we're looking at specific facts. I mean, he had an address of, his address of record was someplace in 29 Palms, right? No, his address of record was in Los Angeles at the Sober Living unit. I think it's on Main Street. The, the Promised Land Sober Living place? Yeah, Sober Living, yeah. Okay, so that was his address of record. Right. And in reality, he was living in 29 Palms. Well, in, he was found in 29 Palms, which is the address he had given to his probation officer as to where he wanted to live. Okay, so taking your point that all he was found guilty of was just not showing up for the annual update, in terms of the judge deciding what punishment is cruel and unusual or not, your guy had a different address. He was living, not living at the place where he was registered, unlike the Gonzalez case where the guy was living at the registered address. But similarly to Gonzalez, there was no problem in finding him and locating him. Well, that's a separate question. And also, the judge in sentencing him was more concerned about his recidivism, as opposed, he didn't go into the fact that they did not have an address. When you look at the sentencing, he did not actually talk about the address as being a primary issue in this particular case. Right. Well, there's a difference. I think Judge Silverman's point, though, is that there is a slight difference or major difference depending on your point of view in the cases, in that most of the cases which have applied to the Eighth Amendment, finding a violation of the Eighth Amendment, have involved cases where the person was living at the same address. In this case, he was at a different address where he was homeless for 29 Palms. It's unclear from the record, but he certainly wasn't at the registered address. So that's one difference. The second difference may be in the amount of recidivism, because the idea is future predictive violent behavior. If he'd been out 10 years without incident, maybe that's one thing. Do you think there's a difference in his case because he's only been out a year or so and still under supervision with a long history of crime? Well, I don't know what his long history of crime is. It's certainly stale. Obviously, he could spend 10 years in prison. That's several parole violations probably for the same reason of not showing up. Remember also, you've got to put this in the light of Mr. Mack is illiterate. So I don't know what that means, but he doesn't – he can't take home his sex registration form and by himself read it and remind himself of what is required. That's neither here nor there. I mean, his – he was found guilty and the conviction was upheld, and you're not challenging the sufficiency of the evidence. Well, the jury – no, but he was found guilty of failing to register on his birth and he was not found guilty of failing to change his address. The jury, obviously, for some reason, and if you look back at the closing arguments in counsel, which admittedly are not in your record here, not in the excerpts of record, and I can certainly supplement with that, the discussion is that, you know, the residency, what does that mean? You know, where do you live? Do you show up at your wife's house every other weekend? Is that your residence? Or, you know, the underpass you're living under, is that your residence? You know, so the jury may have thought that Mr. Mack, you know, didn't know what a residence was. Right. Well, as I understand the state of the evidence, you can correct me if I'm wrong, he told the officers he'd been at his wife's place for two days and then told the officers that he understood that he couldn't go there unless he had been or he'd been – at least the evidence was that he was told he couldn't go there unless he got permission from the Palm Springs Probation Department. Right? He was told he could not live there. Live there. Right. Okay. And then the landlord testified that he'd been there off and on working and at least for probably a five-day period she thought he was living there because – at some point because he was helping out, working around, and from time to time he'd take his grandson to the pool. Is there anything else in the record? No. Not in terms of – We really don't know from the time in March when he was evicted from sober living until he shows up at the end of June, I think, is when they said he was laying gas pipes. We really don't know from the record, the state of the record as to where – And he said, but not at trial, that he was homeless, basically living in a car, right? Yeah. But he didn't testify at trial? No. Right. Okay. Do you want to reserve some for – go ahead. We knew the probation officer didn't know where he was, though. He didn't – the probation officer couldn't – He hadn't shown up for his probation stuff. So he hadn't shown up and he wasn't worried – He told the officers, go check out his wife's address in 29 Palms, which, by the way, is listed as a supplemental address on the bottom of his registration form. So if you look there, it'll say, next of kin or something like that, and it'll say 29 Palms on that particular street. So that is – So you have a combination of things. You have him not being where he was originally registered and him not reporting either. So he basically lost for about three months. Isn't that true? Yeah, if he wasn't, in fact, at his wife's house all that time. So, you know, we don't know. He's eligible for parole, isn't he? Do I understand that correctly? 25 years. 27 years. Yes, he is. Yes, after 27 years. So he will be 76 years old – 78 years old when he's eligible for parole. How old is he now? 62? He's 58. 58, okay. Yes. I thought you said he was 51, or did I mishear that? He was 51 in 2002, I believe. Okay. All right. If we agreed with you and he gets a – he gets habeas relief, what happens? He goes back and gets resentenced? I'm not sure. I believe that – Well, if the sentence is unconstitutional, he goes back to be resentenced. Yeah, I guess it is. So what would his exposure then be if – what would you have us do? Say that he can't apply a three strikes rule? Right. I would say he can't apply it. He would probably have – be time served because the natural sentence is 18 months under the actual statute itself that he violated. And has he served that already? Yes, he definitely has. He's been in custody since he was picked up at his wife's house. All right. Thank you, counsel. We'll give you a couple minutes for rebuttal. Mr. Viena? Good morning, Your Honor. May it please the Court, I am Kevin Viena. I'm the Deputy Attorney General for the State of California, representing Respondent Pelley in this matter. I believe this case comes down to – the decision in this case is governed by Gonzalez, or at least Gonzalez is the guiding principle, and the question is, is this case Gonzalez? And if it's not Gonzalez, how is it different? It's clear to me that the Court is aware of that. That is, in Gonzalez, Mr. Gonzalez was always present where he had told the police he was going to be. How do you deal with Clough on that regard? I mean, Clough, he's at the residence, but he's gone for four months. And it seems to me that somewhat like this case, the government's argument in Clough was, look, we didn't know where he was, it's clouded and so forth, and the California courts rejected that. So how is this case different from Clough? Two points, I think, make it – at least two points make it different. One is that Clough wasn't decided as an Eighth Amendment case. It was decided based on California law and the exercise of the trial court's discretion under – discretion to dismiss – although I think the factors are similar. It kind of informs our analysis. I agree with you it's not controlling, but it informs our analysis. I believe the key in Clough – now, I'm not sure I agree with the State court's resolution of it, but I believe the key in Clough was that the 87 Calab Fourth on page 1003 said that the State had argued that Mr. Clough had been gone for four months and that should be important, but the court of appeals said, well, the State never charged him with that. Indeed, what they said is that – Well, it's not true here, too. I mean, you didn't charge Mr. Mack with being gone for that period of time. He was charged with not registering on his birthday. I mean, he was charged with the umbrella offense. I understand that. But it appears that he was convicted of not registering on his birthday, within five days of his birthday. The – I can't say that they're completely dissimilar. Mr. Mack was charged with a violation of Penal Code Section 290G2, which is simply the failure to register when he had a qualifying felony. And the prosecutor argued all three theories. Right. And then the jury came back and said, if we convict him of the annual registration violation, do we have to consider the other two? Everybody said no, and the jury comes back five minutes later. So, you know, as Judge Silverman pointed out, there's no special verdict for him, but we pretty much know what was going on. Well, I think it is reasonable to assume that the jury selected the easy theory. Yeah. I don't – what I think we don't have is a circumstance like in Gonzales, where the jury decided he was not guilty of establishing a new residence. But the – I think Clough is – well, it's older. The analysis of the Eighth Amendment claim preceded Carmody 1, Carmody in the California Supreme Court, and Carmody 2 in the Court of Appeal, and it preceded this Court's analysis in Gonzales. I believe the State applying its own law on this and this Court might reach a different determination in Clough if he had been charged with that. But looking solely at the crime for which Mr. Clough was charged, that is, did he register on his birthday, the visit to Utah had been in the prior year. The record wasn't developed clearly. It wasn't around the same period of time of the charge. There's no indication. We don't know how often he was home or how often he was not home. But even assuming he was in Utah the entire period of time, for the crime for which he was prosecuted, it was a different time, and he couldn't be convicted under that. Should a court consider that? Yes, I think so. Would a California court reach a different conclusion than in Clough now? Yes, I think so, based on Carmody. But Carmody did not overrule Clough or disapprove of Clough? Didn't purport to, but once again, it was a different circumstance. Carmody was an Eighth Amendment analysis. Clough was the authority to dismiss a strike allegation. What is there in this record, aside from his past convictions, that shows a propensity for future dangerousness? The court asked opposing counsel about recidivism. There are some fairly important factors in this case. Mr. Mack was sentenced to a 20-year prison term after his convictions for rape and forcible sodomy in 1987. He served approximately 10 years and was released in 1997. The very first thing that occurred with Mr. Mack in 1997 is he absconded from parole for two years, was missing for two years, and his parole, he was found to be in violation of parole because he had failed to register during the course of that two years. So certainly in terms of moral culpability, criminal culpability, what we have is the importance of registering for Mr. Mack was what should have been impressed on him. And so what we have is another indication that Mr. Mack is either unwilling or unable to comply with the law. He had another parole violation for brandishing a weapon, and then the reason he gets arrested and prosecuted for this crime is because he disappeared. His parole officer had no contact with him for three months from what I believe was about March 27th. Basically indicated he knew where he was. He testified, well, you go to 29 Palms, you'll find him there. He knew he had information about where we might look for Mr. Mack. So with additional effort, they were able to find him. And the purpose of the registration law is so that police can find someone immediately. Mr. Viena, suppose we take Ms. Buchanan's point that either he was found guilty of the not updating species of this crime or that we can't tell and we give him the benefit of the doubt. Okay. If he's found guilty of only the not annual update version of this, what do we do? What would you have us do? If we determine that's what the record finds, whatever he's charged with, he's charged with, but this is what the jury found. What do we do with that? Yes, Your Honor. I think the Court should have affirmed the decision of the Court of Appeal and Mr. Mack's conviction, and here's why. The – I believe perhaps the key language in Gonzales was the reference to Rommel, where it says although the United States Supreme Court had upheld a long term of years conviction for a relatively minor offense, the Supreme Court reminded all of us that that didn't mean that the field was wide open for sending people to prison forever. And the reference in Rommel was that a life term would not be permissible for overtime parking. In Gonzales, the crime was, as seen by this Court, and I think reasonably so, overtime parking. He was not gone. And there was no violation – there was no interference with the purpose of the registration statute. That is, he was always where he was supposed to be. In that circumstance, the birthday registration is only a backup. In this case, importantly, the backup failed. And I think that's what we're stuck with. That is, Mr. Mack disappeared on March 27th. Well, I mean, that's – that may have been what happened in real life, but I'm talking about what the jury found. If the jury found he just didn't come in on his birthday, aren't we kind of stuck with those facts? No, I don't believe we're stuck with those facts because I think in every other case that has addressed this issue, they've looked at the real facts surrounding it. Because that's what the guy who was charged with it, that's what he was found guilty of. I'm saying in this case, we – the record may not permit us to find anything other than that the jury found him guilty of doing nothing more than letting his birthday come and go and not going in to register. The – in Mr. Gonzales' case, unless we knew the facts of his crime, that is, that he was actually there, hadn't gone somewhere else, the court in Gonzales, I don't think, would have reached – could not as easily have reached the same conclusion. Let me put the question another way because I think I probably have the same issue. Let's just focus on the statute, forgetting the circumstances. It's a pretty technical subsection, failing to register on your birthday. I agree. It's different from the change of failing to register when you have a change of address. Violation of that statute alone, Gonzales would seem to imply, isn't enough to trigger a lifetime sentence. He doesn't say that accurately. But why shouldn't we give that gloss to Gonzales? The significance of Gonzales, I think, is that because Mr. Gonzales was always at the place where he told the police he would be, his crime was the equivalent of overtime parking. But to reach that conclusion, you have to know what the facts of the crime are. Right. So let's – I guess if – I'm not sure that's quite the case, but let's take it in this case. So this case, he's evicted from his – from the halfway house for smoking. And he doesn't have an address. Let's assume that his story, even though he didn't testify, is true, that he's homeless. He's still being homeless. How could he possibly register in a way that would be meaningful to – for the purposes of the statute? The idea of the statute is to locate him. He says, I'm in Los Angeles. That's the only thing he could have done to comply, right? Yes. I agree. And I'm not going to argue that the registration statute is or even can be perfect when we have individuals who are homeless. And the circumstance doesn't apply very well. But for the statute to work, for the purposes of the statute to be met, homeless people are required to make extra effort to notify the local police of where they are. Their reporting requirements are more frequent. For the statute to work, Mr. Mack was required to notify when he changed it, when he had left his address. And he failed to do that and could have been prosecuted for that as well. But he was? He was not. But the significance is the crime can be minor when there is no interference with the purpose of the statute, and it's other than minor when there is some interference with the purpose of the statute. And for Mr. Mack, there was. Okay. Judge Weisslein, do you have any questions? No, I have no questions. Can I just ask you the same thing I asked Mr. Cannon? If we were to grant habeas relief, what would happen? I believe that the appropriate relief would be for a conditional grant of relief, either that he be resentenced consistent with this Court's decision or that he be released. I think the effect in either case would be the same, that is, even assuming that he could be punished as a one-strike recidivist and assuming that the two years for his prior prison term would apply, his prison term would be up. So he's looking at 18 months if we ---- Well, doubled, plus two years. So ---- Your view of the maximum is how much? I wasn't clear. Actually, I'm sorry. I'm not exactly sure. But if it's a regular felony, it would be 16-2-3 would be the sentencing selections. So three years doubled plus two would be a maximum of eight years. I think he's done under any circumstance. Even if it can't be more than that, and I believe he'd be done even if it was that much. Okay. Thank you. Thank you, Your Honor. We'll give you two minutes for a vote. This is more like a thought than anything else. I'm wondering if this could even trigger a strike, even a single strike, if it's a regulatory offense as opposed to another felony. It's like a foul tip. What's that? Not a strike. Sort of like a foul tip. Right. Exactly. Exactly. And finally, just want to remind the Court that ---- Which sometimes can. That's right. ---- is that proportionality to the actual crime committed is what's important here. Mr. Mack did have a criminal record, but it was a ---- I think it was a diminishing record. It started off as burglary, and then he got somehow into drugs, and then he did this unfortunate rape and the violent crime for which he's paying the price continually. But his crimes were not adding robberies and burglaries and things afterwards, as in Gonzales. Thank you. No, but he had some parole violations. I think that's a little bit troublesome. He had parole violations. That's true. You know, that is a ---- even though it's mostly failure to report, that is a factor, I think. Yes. All right. Thank you. Thank you both for your arguments. The case history will be submitted. And we'll proceed with the next case on the oral argument calendar, which is Richardson v. Vasquez. Mr. Bione, you can stay put.
judges: Beistline, Thomas, Silverman